IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY HERNANDEZ, | ) | |
| | ) | |
| Petitioner, | ) | No. 13 C 3394 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RICHARD HARRINGTON, Warden, Menard Correctional Center, | ) ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Anthony Hernandez filed an amended petition (doc. 47) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his trial counsel was ineffective for failing to impeach one of the government's witnesses with a prior inconsistent statement (Ground One) and for failing to investigate and call a potential alibi witness (Ground Two). Petitioner also alleges that his appellate counsel was ineffective for failing to raise his Ground Two claim on direct appeal (Ground Three). Having reviewed the supplemental briefing, the court now denies the habeas petition.

## **BACKGROUND**

**I.  Facts**

The facts of this case are discussed at length by the Illinois Appellate Court in its November 16, 2006, order on direct appeal.[1] People v. Hernandez, No. 1-04-3368 (Ill. App. Ct. Nov. 15, 2006). Petitioner was convicted at a bench trial of murdering Joey Arroyo (the "victim"), who was shot and killed in the early morning hours of June 28, 2000. Petitioner's

---

[1] State court findings are presumed correct unless a petitioner can rebut the presumption of correctness by clear and convincing evidence, which petitioner has not done. See Brumfield v. Cain, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. 2254(e)(1)).

fellow Spanish Cobras gang member, Brian Stein, testified at petitioner's trial that on the evening of June 27, 2000, he and another gang member, Omar Rodriguez, stole a burgundy Toyota Camry. Around midnight, Stein and Rodriguez came across several members of the Royals gang, including the victim. Stein and Rodriguez told the group of Royals that they were also Royals, at which time the victim invited them to join other Royals at Legion Park. Stein testified that he and Rodriguez spent about 15 minutes at the park, subsequently leaving to meet other members of the Cobras gang at Gompers Park.

Stein testified that petitioner, who was the leader of the Cobras at the time, was at Gompers Park with a group of other Cobras. According to Stein, Rodriguez stated that the group of Cobras should "go get" the group of Royals at Legion Park. Thereafter, the group of Cobras drove in three vehicles to Legion Park. Stein testified that he and Jason Piurkowski rode in the stolen burgundy Camry that was driven by Rodriguez, and that Robert Gomez drove a gray station wagon with petitioner in the back seat and petitioner's girlfriend, Cassandra Rivera, in the front passenger seat. Two other Cobras, Richard Cardenas and "White Boy" rode in a red Acura driven by "Gill."

Stein testified that as they arrived at Legion Park, he heard two gunshots as the vehicle he was riding in passed a group of Royals who were on his right side. According to Stein, a red car driven by the Royals then crashed into Gomez's gray station wagon and into Gill's red Acura. Rodriguez subsequently ran the vehicle he was driving into the Royals' vehicle, after which Stein saw Cardenas trying to pull one of the Royals out of the car. Stein testified that he then saw petitioner approach the driver's side of the Royals' vehicle, reach his arm through the window, and then heard two gunshots and saw two flashes of light. Stein testified that at the

2

time he heard the two gunshots, petitioner was the only person at the Royals' vehicle and Rodriguez was running towards Gill's vehicle.

Malysa Riordan-Korner, the victim's girlfriend, testified that she was in Louis Tirado's vehicle when it crashed into Gomez's gray station wagon. Korner testified that she was in the front passenger seat, Tirado was driving, and the victim was between the two of them. According to Korner's testimony, after the collision, the victim hunched over her, trying to protect her. Korner testified that she felt people struggling in the car and then heard "maybe" two gunshots coming from very close by. Thereafter, Korner saw two pairs of arms reach inside the car, one of which was trying to pull the victim out of the vehicle. After climbing out of the driver's side window, Korner testified that a dark-colored vehicle drove up and someone inside told her it was "Cobras' world." Korner subsequently identified petitioner in a lineup as the individual who made this statement to her.

Cardenas, who pled guilty to conspiracy to commit murder and was serving a six and one-half year sentence at the time of petitioner's trial for his part in the victim's death, testified that on the night of the incident he was with Gill and another individual at Jenson Park. Cardenas testified that he was in Gill's Acura when he saw Rodriguez in a Camry and Gomez, along with petitioner and his girlfriend, in a gray station wagon. Cardenas testified that he heard two shots, but could not tell where they came from. He testified that upon exiting the vehicle, a "big red car" crashed into Gomez's station wagon. Cardenas testified that he approached the red vehicle, reaching through the driver's side window, and tried to pull the driver out of the vehicle. While trying to pull the driver out of the red vehicle, Cardenas testified that he heard a gunshot from behind him and to the right, but did not see anyone standing to his right.

3

Cardenas was impeached with a handwritten statement he had given the police on July 1, 2000. In the statement, Cardenas reported that as the Cobras' three vehicles were driving he saw petitioner yell something out the window to a couple of people on the street, stick his hand out the window, and fire two shots at those people. The statement further related that following the car crash, Cardenas ran up to the Royals' red vehicle and tried to pull a man out of the car. As he did so, Cardenas wrote that he heard a gunshot fired from "very close" to his right side into the red car toward the man and woman inside. When Cardenas looked around, he saw the defendant turning away from the red car with a gun in his hand. Cardenas testified that the handwritten statement was fabricated and that the police had physically abused him and denied him food and drink prior to him giving the statement. The state rebutted this testimony with testimony from the detectives who took his written statement.

Gomez, who pled guilty to first degree murder and attempted murder for his role in the victim's death, testified at petitioner's trial that he and Rodriguez were Spanish Cobras gang members and that petitioner was the gang's leader. Gomez further testified that on the night of June 27, 2000, he and Rodriguez were standing on the street when a red car drove by and Rodriguez spoke to the people inside the car. According to Gomez's testimony, Rodriguez told him to follow the red car, at which time he saw a passenger in the car display a "Royals sign" at a white man standing between two parked cars on the side of the street. Gomez testified that as he drove by the white man standing by the parked cars, he heard several shots. Gomez subsequently passed the red car, at which time he noticed that Rodriguez had a gun. As Gomez was ordering Rodriguez out of his car because Rodriguez had a gun, the red car "came out of

nowhere" and smashed into Gomez's car. Gomez testified that when he looked up he saw Rodriguez walk toward the driver's side of the red car and fire one shot into the car.

The state impeached Gomez with a videotaped statement he gave to police regarding the night of June 27, 2000. In the videotaped statement, Gomez reported that on the night of the incident petitioner and petitioner's girlfriend were in his vehicle as the three followed Rodriguez and another vehicle looking for Royals to fight. Gomez further stated in the video that when he turned onto a side street, petitioner fired two shots out of his car at a man standing on the street. Following the crash with the red car, Gomez stated that he saw defendant approach the red car, point a gun at the driver, and fire one shot. Gomez testified at petitioner's trial that the videotaped statement was false, and that he had been coerced into giving it. Gomez testified that defendant was not in his car on June 27, 2000, and that he did not fire the shot into the red car. The state rebutted this testimony with testimony from the detectives who took his videotaped statement.

Rodriguez, who pled guilty to first degree murder of the victim, testified at petitioner's trial that he was driving with Stein in a stolen maroon Camry on the evening of June 27, 2000. Rodriguez testified that after joining the Royals at Legion Park, he and Stein went to Jenson Park where other Cobras were hanging out. Rodriguez testified that petitioner was not at the park. According to Rodriguez, he told the other Cobras where they could find Royals gang members, after which the group drove in three vehicles to the area where the Royals were located. Rodriguez testified that he and Stein were in the Camry, Gomez drove his gray station wagon, and that the third vehicle was red. Rodriguez testified that upon seeing the Royals he had seen earlier in the night, he heard two gunshots, after which there was a collision. Following the

collision, Rodriguez ran to Gill's car, and as he was doing so, he heard a gunshot from behind him. Rodriguez testified that he looked around, but did not see who had fired the shot.

The state impeached Rodriguez's testimony with a videotaped statement he gave to the police on June 28, 2000. In the statement, Rodriguez related that earlier in the evening on June 27, 2000, petitioner had told him he had a gun. Following the crash, Rodriguez saw petitioner approach the Royals' car with a gun and then heard shots, but did not see the shooting. Rodriguez testified that the videotaped statement was false and the result of coercion by the detectives who interviewed him. The state rebutted this testimony with the testimony of the detectives who had taken his statement.

A Cook County Medical Examiner testified that the victim's death was consistent with a homicide and was caused by a gunshot to the victim's back. The medical examiner testified that the bullet entered the victim's back in a trajectory that was consistent with the victim having been hunched over and covering someone on the front seat of the vehicle.

Following the bench trial, petitioner was convicted of first degree murder, two counts of attempted first degree murder, and unlawful use of a weapon by a felon. In announcing its decision, the court found that the prior inconsistent statements of Cardenas, Gomez, and Rodriguez constituted the "main thrust of the evidence," and admitted those statements as substantive evidence. The trial judge noted that his credibility determination was an "easy one," stating that he did not believe Cardenas's, Gomez's, or Rodriguez's trial testimony. The court found that the three witnesses' earlier statements consistently and fully detailed the sequence of events the night of the victim's murder.

The court discredited the three witnesses' claims of physical abuse and coercion by the interviewing detectives, stating that their claims were not credible because each witness only recanted their earlier statements to the extent that the statement implicated petitioner, but did not recant the factual aspects of the statements. The trial court also found that the three witnesses had a much stronger motive to lie at trial than when they gave their earlier custodial statements because by the time of trial each had already been convicted and sentenced and was being brought to testify against their gang leader in his presence.

## II.    Procedure

Petitioner was sentenced by the trial court to 55 years' imprisonment for murder, ten years' imprisonment for each of the two attempted murder counts, and five years' imprisonment for the unlawful use of a weapon by a felon count. Petitioner's sentences for the two counts of attempted murder and unlawful use of a weapon by a felon were ordered to run concurrently to each other but consecutively to the murder sentence.

Represented by appellate counsel, petitioner appealed his conviction and sentence based on Ground One. People v. Hernandez, No. 1-04-3368 (Ill. App. Ct. Nov. 15, 2006). The Illinois Appellate Court affirmed petitioner's conviction and sentence. Id. Petitioner thereafter filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising the same ineffective assistance of counsel claim, which was denied on March 28, 2007. People v. Hernandez, 223 Ill.2d 654 (2007).

On August 20, 2009, petitioner filed a pro se "Petition for Postconviction Relief from Judgment Pursuant to the Post-Judgment Act 735 ILCS 5/2-1401," challenging the Illinois statutes under which he was convicted of first degree murder and sentenced. The trial court

7

denied the petition pursuant to both the Illinois Post-Judgement Act and the Post-Conviction Hearing Act, 725 ILCS 5/122-1. People v. Hernandez, No. 01-CR-13645 (Cir. Ct. Cook County Nov. 18, 2009). Plaintiff did not appeal the dismissal. See People v. Hernandez, No. 1-10-3612 (Ill. App. Ct. Aug. 30, 2012). However, on August 8, 2010, petitioner filed a pro se post-conviction petition, raising Grounds Two and Three. The trial court denied the petition as an unauthorized successive petition for post-conviction relief. People v. Hernandez, No. 01-CR-13645 (Cir. Ct. Cook County Oct. 19, 2010).

Petitioner appealed the denial of his second pro se filing, arguing that the trial court had erred in dismissing his petition as successive because his original pro se filing was not a post-conviction petition. The Illinois Appellate Court affirmed, holding that petitioner had waived any argument concerning the propriety of the recharacterization of his first pro se filing because he had not appealed that decision. People v. Hernandez, No. 1-10-3612 (Ill. App. Ct. Aug. 30, 2012). Petitioner's petition for rehearing was denied, People v. Hernandez, No. 10-3612 (Ill. App. Ct. Sept. 21, 2012), as was his PLA to the Illinois Supreme Court. People v. Hernandez, No. 115127 (Ill. Jan. 30, 2013). On May 6, 2013, petitioner filed the instant § 2254 petition for a writ of habeas corpus.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard of review applied to federal habeas corpus petitions filed under 28 U.S.C. § 2254 by persons in state custody. Under the AEDPA, a petitioner is not entitled to a writ of habeas corpus for a non-defaulted claim unless the challenged state court decision was: (1) "contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams, 562 U.S. at 409. It is a difficult standard to meet, because unreasonable means something lying "well outside the boundaries of permissible differences of opinion." McFowler v. Jaimet, 349 F.3d 436, 447 (7th Cir. 2003).

**II.     Analysis**

Petitioner claims that his trial counsel was ineffective in two ways. First, petitioner argues that his trial counsel was ineffective for failing to impeach Rodriguez with an affidavit counsel obtained prior to trial in which Rodriguez takes responsibility for shooting the victim and denies that petitioner was present at the time of the shooting. Petitioner contends that trial counsel should have used Rodriguez's affidavit as a prior inconsistent statement, impeaching Rodriguez's trial testimony that he did not know who fired the shots that killed the victim.

9

Second, petitioner contends that his trial counsel was ineffective for failing to investigate, interview, and call as a witness his ex-girlfriend, Rivera, who allegedly would have testified as an alibi witness in support of his innocence. In support of this claim, petitioner attaches affidavits from Rivera and his mother to his petition. Rivera's affidavit asserts that she was with petitioner at the scene of the shooting, but that petitioner was not the shooter. According to Rivera's affidavit, she "did not come forward sooner [be]cause [she] was afraid and . . . was told that [petitioner] had all he needed to prove his innocence without [her]." Petitioner's mother, Linda Hernandez, states in an affidavit that she "personally notified" petitioner's trial counsel that Rivera "could verify what [her] son was doing on the night of the crime." Hernandez asserts that despite giving him Rivera's contact information, petitioner's trial counsel "did not make any effort to call [her] as an alibi witness." Finally, petitioner claims that his appellate counsel was ineffective for failing to raise this ineffective assistance of trial counsel claim on direct appeal.

Although respondent argues that petitioner's § 2254 petition is untimely, the parties have agreed to have the court first address whether petitioner's claims are procedurally defaulted, and if not, the merits of petitioner's claims, prior to turning to the timeliness of the petition.

### A. Procedural Default

Respondent argues that each of petitioner's three claims are procedurally defaulted. Subsection 2254(b)(1) of the AEDPA provides that "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." To meet this exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve

any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010). In Illinois, this process requires a petitioner to have presented his or her claim to both the Illinois Appellate Court and Illinois Supreme Court. O'Sullivan, 526 U.S. at 845; Smith, 598 F.3d at 382. Otherwise, the claim is procedurally defaulted and cannot be decided on the merits. Smith, 598 F.3d at 382. "A petitioner also procedurally defaults a claim if he fails to raise his federal claim in compliance with relevant state procedural rules, and the state court's refusal to adjudicate the claim is based on an independent and adequate state ground." Johnson v. Williams, No. 14-c-4196, 2015 WL 2452828, at *4 (N.D. Ill. May 20, 2015); Smith, 598 F.3d at 382. A federal court may entertain a procedurally defaulted claim only if the petitioner shows cause and prejudice, or that failure to review the claim will result in a fundamental miscarriage of justice. Smith, 598 F.3d at 382; see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### 1. Ground One

Respondent argues that petitioner's first ineffective assistance of trial counsel claim is procedurally defaulted because the state court rejected the claim on an independent and adequate state ground. According to respondent, the state appellate court held that petitioner had forfeited his Ground One claim on direct appeal because he had not raised it in his post-trial motion. Because the state appellate court's "forfeiture decision is independent of federal law," respondent argues that this court may not review the claim. The court agrees.

Petitioner does not dispute that Illinois procedural rules required him to raise his Ground One claim in a post-trial motion.[2] See, e.g., People v. Turner, 233 Ill.App.3d 449, 452 (App. Ct. 1992) ("Defendant's failure to file a post-trial motion constitutes a waiver of this issue on appeal."); see also Miranda v. Leibach, 394 F.3d 984, 992 (7th Cir. 2005) ("Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial."). Nor does he contend that Illinois's forfeiture rule is not an adequate state law ground. See Miranda, 394 F.3d at 997 (holding that Illinois's waiver law was an adequate state law ground). Instead, petitioner argues that the state appellate court did not rely solely on forfeiture, but merely "noted in passing" that petitioner did not raise the claim in his post-trial motion. According to petitioner, the state appellate court denied petitioner's appeal based on the merits of his Ground One claim, thereby allowing this court to review the claim.

Contrary to petitioner's contentions, it is evident from the state appellate court's order that its decision denying petitioner's constitutional claim clearly and expressly relied on forfeiture. See People v. Hernandez, No. 1-04-3368 (Ill. App. Ct. Nov. 15, 2006). In that order, the Illinois Appellate Court recounted that Rodriguez testified at petitioner's trial that petitioner was not present at the time of the shooting and that he did not see who shot the victim. Rodriguez's testimony, however, was impeached with a videotaped statement he gave to the police in which he implicated petitioner as the shooter.

The appellate court explained that following his conviction, petitioner filed a motion for a new trial arguing that his trial counsel was ineffective for failing to, among other things,

---

[2] The court notes that petitioner's post-trial counsel was not the same as his trial counsel.

12

introduce Rodriguez's handwritten statement as a prior *consistent* statement, thereby rebutting the state's assertion that Rodriguez had changed his version of the events for the first time at trial. Petitioner's ineffective assistance of counsel claim on appeal, the appellate court explained, was that trial counsel was ineffective for failing to introduce Rodriguez's handwritten statement as a prior *inconsistent* statement, impeaching Rodriguez's trial testimony that he did not know who the shooter was. Accordingly, the appellate court observed that petitioner had failed to raise the claim in his post trial motion, noting that "[w]here defendant fails to raise an issue in his post-trial motion, it is waived for purposes of appeal."

Continuing its analysis, the appellate court stated that petitioner attempted "to avoid waiver by claiming that post-trial counsel's failure to argue this ineffectiveness of trial counsel claim in the context of Rodriguez's affidavit being admissible as a prior inconsistent statement was unreasonable, and that he was prejudiced by counsel's omission to the extent that the issue is waived on appeal." The state court subsequently engaged in a plain error review, determining whether petitioner was "prejudice[d] from counsel's failure to preserve an error." The court concluded that petitioner could not establish prejudice because trial counsel's alleged error did not satisfy Strickland's two prong ineffective assistance of counsel test.

Under Illinois's plain error doctrine, a reviewing court is permitted to address an issue that has been waived "when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." See also People v. Herron, 215 Ill.2d 167, 186-87 (2005); Rodriguez v. McAdory, 318 F.3d 733, 735 n.2 (7th Cir. 2003). Under the first prong of the plain error review, "the defendant must prove 'prejudicial error,'" meaning "that there was plain error and that the evidence was so closely balanced that

13

the error alone severely threatened to tip the scales of justice against him." Herron, 215 Ill.2d at 187. Although the state appellate court did not explicitly use the term "plain error," the court's Strickland analysis is consistent with determining whether trial counsel's performance resulted in an error and whether it was prejudicial. See, e.g., People v. White, 956 N.E.2d 379, 408 (Ill. 2011) (discussing the similarities between plain error review analysis and ineffective assistance of counsel analysis). As the Seventh Circuit has explained, "a state court's review for plain error does not cure a procedural default," even where the court's application of the doctrine involves a review of the merits. Rodriguez, 318 F.3d at 735-736. Because the state appellate court rejected petitioner's Ground One claim on an independent and adequate state ground, this court is procedurally barred from reviewing it now.

Petitioner does not attempt to overcome this procedural default by arguing cause for noncompliance with the state procedural rule and actual prejudice arising from the alleged constitutional violation. Nor does petitioner argue that a fundamental miscarriage of justice will occur if the court does not address the merits of his claim.

    **2. Grounds Two & Three**

As discussed above, in August 2009, petitioner filed a pro se "Petition for Postconviction Relief from Judgment Pursuant to the Post-Judgment Act 735 ILCS 5/2-1401," challenging the Illinois statutes under which he was convicted of first degree murder and sentenced. Although the petition was titled as being brought pursuant to 735 ILCS 5/2-1401, which allows a petitioner to ask for the vacatur of a final judgment or order older than 30 days, the trial court found that petitioner's reference to "&25 ILCS 5/22-1(A)" in his introductory paragraph to be a typographical error. The trial court concluded that petitioner was really seeking to utilize the

Post Conviction Hearing Act, 725 ILCS 5/122-1. Construing the petition as a post-conviction petition, the trial court denied the petition as patently meritless under both statutes. People v. Hernandez, No. 01-CR-13645 (Cir. Ct. Cook County Nov. 18, 2009). Plaintiff did not appeal the trial court's dismissal. See People v. Hernandez, No. 1-10-3612 (Ill. App. Ct. Aug. 30, 2012).

A year later, petitioner filed a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, raising Grounds Two and Three. The trial court denied the petition as an unauthorized successive petition for post-conviction relief. People v. Hernandez, No. 01-CR-13645 (Cir. Ct. Cook County Oct. 19, 2010). Petitioner appealed, arguing that the trial court erred in dismissing his petition as a successive post-conviction petition because his first pro se filing was not a post-conviction petition. Petitioner argued that the trial court had improperly recharacterized the filing as a post-conviction petition without notice or an opportunity to withdraw or amend it. The state appellate court affirmed, reasoning that because petitioner had not appealed the trial court's decision dismissing his first pro se pleading as a post-conviction petition, he had procedurally defaulted any argument that the trial court's ruling was in error. Petitioner's request for rehearing and ensuing PLA were both denied.

Respondent argues that petitioner's Ground Two and Three claims are procedurally barred because the state court "rejected [them] on the independent and adequate state law ground that petitioner was not granted leave to file the successive postconviction petition in which he raised them." Relying on Estelle v. McGuire, 502 U.S. 62, 68 (1991), respondent contends that notwithstanding the state trial court's alleged recharacterized of petitioner's first collateral attack, this court cannot reach the claims because "a federal court on habeas review has no authority to review such state-court applications of state procedural rules." Although the court

15

agrees that the state court rejected petitioner's two claims on independent and adequate state grounds, the court disagrees that McGuire is controlling.

In McGuire, the Ninth Circuit ruled, in part, that the petitioner's due process rights were violated by the admission of certain evidence that was inadmissible pursuant to California law. McGuire, 502 U.S. at 67. The Supreme Court reversed the Ninth Circuit, reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68. Respondent argues that McGuire, therefore, bars this court from reviewing the trial court's recharacterization of petitioner's first pro se filing.

Petitioner's habeas claims, however, do not challenge the state court's application of state law. Instead, petitioner argues that because the trial court improperly applied a state procedural bar in denying his Ground Two and Three claims, it is not an adequate state law ground upon which his claims can be barred from federal review. Specifically, petitioner argues that in recharacterizing his clearly labeled petition for relief pursuant to the Post Judgement Act as a petition pursuant to the Post Conviction Hearing Act without notice or a chance to withdraw or amend it, the state court violated Illinois Supreme Court precedent established in People v. Shellstrom, 216 Ill.2d 45 (2005). Consequently, McGuire is inapplicable to the present case.

In Shellstrom, the Illinois Supreme Court held that "when a circuit court is recharacterizing as a first postconviction petition a pleading that a *pro se* litigant has labeled as a different action cognizable under Illinois law, the circuit court must (1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to

16

withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." Shellstom, 216 Ill.2d at 57 (emphasis included). Because petitioner received neither notice nor an opportunity to withdraw or amend his petition, it appears that the trial court failed to follow Shellstrom's directive when it recharacterized petitioner's clearly labeled pro se filing. Petitioner's claims, however, are still procedurally defaulted because the trial court's recharacterization of his first pro se filing was not the state law ground that was the basis for the appellate court rejecting his two claims.

Petitioner's Ground Two and Three claims were rejected by the state appellate court based on waiver. In particular, the state appellate court held that petitioner's failure to appeal the court's recharacterization of his 2009 pro se filing barred any subsequent argument that the court's recharacterization was in error. Pursuant to Illinois procedural law, "[a]ny issues which could have been raised on direct appeal, but were not, are procedurally defaulted." People v. West, 187 Ill.2d 418, 425 (1999). Because petitioner's two claims were rejected on an independent and adequate state ground, the court can entertain the claims only if petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law. Smith, 598 F.3d at 382; see also Coleman, 501 U.S. at 750.

To demonstrate cause for failure to exhaust, a petitioner must establish that some factor external to the defense impeded his efforts to comply with the state's procedural rule. McCleskey v. Zant, 499 U.S. 467, 493 (1991). The Supreme Court has identified three types of "objective factors" that constitute sufficient cause: (1) "interference by officials that makes compliance . . . impractical"; (2) constitutionally ineffective assistance of counsel; and (3) " a showing that the factual or legal basis for a claim was not reasonably available to counsel." Id.;

17

see also Guest v. McCann, 474 F.3d 926, 930 (7th Cir. 2007). Petitioner argues that the lack of notice and opportunity to amend his first pro se pleading constitutes cause and prejudice because the legal basis for his claim was not reasonably available to him at the time he filed the petition. Specifically, petitioner argues that because the Illinois Supreme Court has long held that the Post Judgment Act is not an appropriate vehicle to bring an ineffective assistance of counsel claim, petitioner could not have pursued his Ground Two and Three claims through his first pro se petition. Petitioner contends that "without warning that the Circuit Court was re-characterizing his petition, [he] would not have known to include his federal claims in an amended post-conviction petition" or "to even appeal the re-characterization." The court agrees.

It is undisputed that petitioner's first pro se filing was labeled as a petition for relief pursuant to the Illinois Post Judgment Act, 735 ILCS 5/2-1401. Despite the petition's unambiguous title, the trial court recharacterized it as a post-conviction petition based on petitioner's reference in the petition's introductory paragraph to some other Illinois statute that was improperly cited. The state trial court's actions fall squarely within Shellstrom.[3] 216 Ill.2d at 47 (recharacterizing pro se pleading entitled "Motion to Reduce Sentence, Alternatively, Petition for Writ of Mandamus to Order Strict Compliance with Terms of Guilty Plea," as a post-conviction petition). Accordingly, the trial court, pursuant to Shellstrom, was required to: (1) provide petitioner with notice of its intention to recharacterize the petition; (2) warn petitioner of the consequences of such recharacterization; and (3) provide petitioner with the opportunity to

---

[3] Respondent's argument that petitioner was not entitled to notice of the trial court's recharactization because the trial court "did not 'recharacterize' the first collateral attack as a postconviction petition, but determined that it *was* a postconviction petition" is unpersuasive. (Emphasis included.)

18

withdraw the petition or amend it to include all the claims appropriate to a post-conviction petition. Had the trial court provided petitioner with the information mandated by Shellstrom, petitioner – equipped with knowledge of the consequences of having his pleading treated as a post-conviction petition – could have withdrawn the pleading, amended it to include his ineffective assistance claims, or appealed the recharacterization. Because the trial court's failure to comply with Shellstrom is an objective factor, external to petitioner, that impeded petitioner's ability to pursue Grounds Two and Three in compliance with state procedures, the court concludes that petitioner has established cause for his default.

Petitioner, however, cannot establish prejudice from the alleged violations of federal law. "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." Smith, 598 F.3d at 382. Because Ground Three is based on appellate counsel's failure to raise petitioner's Ground Two claim on direct appeal, petitioner's inability to establish prejudice with respect to Ground Two forecloses such a finding with respect to Ground Three.

Assuming that trial counsel's failure to investigate or call petitioner's ex-girlfriend as an alibi witness constituted deficient performance, petitioner cannot establish that there is a reasonable probability that, but for counsel's substandard performance, the result of his trial would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). As an initial matter, the fact-finder in petitioner's criminal trial concluded that the prior inconsistent statements of Cardenas, Gomez, and Rodriguez constituted the "main thrust of the evidence." According to the trial judge, the three witnesses' trial testimony, retracting their earlier statements identifying petitioner as the shooter, were not credible because, having already pled guilty and been sentenced, they were heavily incentivized to change their testimony at trial.

19

Contrary to petitioner's characterization of the prosecution's evidence as "weak or conflicting," the trial judge expressly stated that his decision on credibility was "an easy one." This court has no reason to overturn the trier of fact's credibility determination.

Moreover, Rivera, as petitioner's former girlfriend, had similar credibility problems. In addition, her alleged testimony would have directly contradicted Rodriguez's trial testimony, which was beneficial to petitioner, that petitioner was not at the scene of the crime. In light of Rivera's limited credibility and the contradictory nature of her testimony, this court concludes that there is no reasonable probability that the result of petitioner's trial would have been different had Rivera testified at petitioner's trial consistent with her affidavit. For the reasons discussed above, therefore, the court denies the petition for a writ of habeas corpus.

## CONCLUSION

For the foregoing reasons, the court denies petitioner's petition (doc. 47) for habeas corpus.

**ENTER:** **August 29, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**